McChesney brought this suit to dissolve the partnership theretofore existing between himself and appellants, J. L. and R. P. Tyler, doing business under the firm name of Southern Land Development Company; McChesney having a one-fourth interest in the firm, the appellants jointly owning the other three-fourths interest therein. The appointment of a receiver and an accounting of the partnership affairs was also sought.
The Southern Land Development Company was originally organized by McChesney, Brooke Smith, and the Tylers; each having a fourth interest therein. Its business was to cut into town lots certain acreage property and sell same. Subsequent to its *Page 1116 
organization, J. L. Tyler acquired the Smith interest. The books of the partnership consist of a ledger and a contract register. The contract register contained the accounts the various purchasers of lots from the company. In it would be entered the name of the purchaser, his address, number of contract and payments made by him. The lots were sold on payment of $10 cash and $10 per month until $170 had been paid. The register also showed the amount of agent's commissions paid out of each purchase. This was the only record the company had with its customers and agents, and it was testified to by all parties that it was correct none of such accounts being in the ledge proper. The ledger proper showed other accounts, viz. the accounts of the individual partners, interest and discount account furniture and fixture account, expense account, real estate account, and other items outside the sale of lots, which, as stated above, were shown only in the contract register. Both the contract register, showing said receipts, and the ledger, showing all other accounts, were offered in evidence, The totals of the various accounts are testified to and are not disputed, and a summary thereof appears in the statement of facts and is taken as correct by the parties.
The items of the accounts disputed by McChesney were numerous, but on the proof only a few were considered. First, McChesney claimed that $5,888 paid by the firm to the Tylers as bonus on land conveyed by them to the firm was excessive. Another disputed item was the charge of $1,400 against McChesney which was charged to him as expense for clerical hire after the dispute between the parties arose and McChesney left the office and a clerk was hired to do the clerical work which he had been doing. Another item was $250 paid to attorneys for answering in a garnishment suit at Brownwood, Tex. An item of $50 paid to one Walter Browning, and another item of $83.70 paid to J. L. Tyler for traveling expenses. All of the witnesses testified to the total amounts of the various accounts in the ledger, and their testimony is not in conflict; but none of the witnesses testified to the receipts as shown by the contract register except McChesney, and his testimony is not disputed.
It appears that the defendants were attempting to settle upon the basis of the amount of money that the firm had in bank, rather than upon the basis of the receipts shown by the contract register. The real issue between the parties was as to the total receipts of the partnership, there being no dispute as to the amount of disbursements except the above items particularly mentioned, and appellants claim that the amount in bank showed the correct net receipts, while McChesney claimed that the contract register showed vastly more receipts than were accounted for by the cash in bank and the total disbursements as shown by the ledger; there being a variance of $11,000 or more. The jury returned a verdict in favor of McChesney for a one-fourth interest in the real and personal property of the firm, a onefourth interest in the net profits which it found to be $16,958.30. They further found the difference between the cash market value of the real estate sold to the firm and the amount they received from the firm for the same to be $2,673, which they added to the net profits, making a total net profit of $19,631.30. One-fourth of this amount, to wit, $4,907.82, was due McChesney, from which they deducted a charge against McChesney of $709.90, leaving the net amount due him to be $4,197.92, which amount they found for him, and for which amount judgment was rendered in his favor, together with a onefourth interest in the real and personal property of the firm.
Error is first assigned to the court's refusal to permit appellants to offer in evidence a trial balance made from the books of the company. In this there was no error. The issue to be determined was the net profits of the partnership. A trial balance would not show this. A trial balance simply shows that the books are in balance or out of balance as the case may be. It would not properly show net profits. The proper way to obtain the amount of the net profits was to ascertain the company's gross receipts and deduct therefrom all proper disbursements and charges. This a trial balance would not show.
Furthermore, the bill of exception fails to incorporate the trial balance, exclusion of which is complained of, and this court has no way whatever of determining what the trial balance showed. We cannot presume or assume that it would have thrown any light upon the subject-matter of the inquiry, for, as stated, a trial balance, ordinarily, would not do so.
The second and third assignments complain of the court's refusal to permit the witness McAdams to testify that the federal attorney of the Ft. Worth district came out to investigate the Southern Land Development Company's manner and mode of doing business and that they had out their contract, which was a contract to sell a lot and give so many acres of land with each contract, and that at that time they had no acreage save and except a tract cut up into lots, and that the federal attorney informed them it would be necessary to secure acreage property and put it into the name of the Southern band Development Company; that McChesney was informed of this matter and of what the federal attorney had said and was aware and knew that, unless such acreage property was secured, all the members of the partnership were liable to prosecution. In the first place, a conversation between McAdams and the federal district attorney, outside the hearing of the plaintiff, *Page 1117 
ordinarily would not be admissible in evidence against McChesney; but, aside from this consideration, it is not apparent how the facts which the witness sought to detail would in any wise affect McChesney's right to an accounting, and has no bearing whatever upon the issue as to the amount of the net profits to which he was entitled. The preferred testimony was wholly immaterial to any issue in the case.
R. P. Tyler, while testifying in his own behalf, was asked by his counsel this question:
"When it becomes necessary to go into your books, the system of bookkeeping that was carried on there, to get a true system (criterion) of actual cash received and paid out, to what books do you go for a true and correct criterion and guide?"
Objection was made by plaintiff, and the witness was not permitted to answer. If permitted to answer, the witness would have stated that he would go to the ledger and cash book to get the actual cash received and paid out. Error is assigned to the exclusion of this testimony. There was no error in the court's action. R. P. Tyler was not a bookkeeper. All of the books of the company were offered in evidence. The court permitted McChesney, who was a bookkeeper, Beauchamp, Browning, C. E. Tyler, and McAdams, all bookkeepers, and also R. P. Tyler, upon behalf of appellants, to explain the purpose of each and every book and to explain the accounts kept therein. It was therefore not error to exclude a general question calling for a mere conclusion of R. P. Tyler as to what book he would look to in order to ascertain the amount of cash received. His conclusion might have been an entirely erroneous one. In fact, it clearly appears that it was so.
Error is assigned to the admission of testimony of the witness J. W. Moore as to the value of certain lands. The bill of exception taken to the admission of his testimony shows that the objection urged in the lower court is entirely different from the objection urged in the brief, for which reason the objection presented under this assignment is overruled.
Error is assigned to the refusal of the court to give a requested special charge instructing the jury that if the plaintiff voluntarily left the office of the copartnership, and if they found from the evidence that under the articles of copartnership plaintiff was to keep the books of the company, and by reason of his failure to do so it became necessary to have the same done, then, for any amount so expended for such work, they would find the same to be a valid charge against the plaintiff. The court's charge sufficiently covered this phase of the case. Furthermore, the jury found a charge against him for the actual cost of doing the clerical work that he was supposed to do under the partnership agreement, to wit, the sum of $709.90. For the reasons indicated, the refusal of the requested charge presents no error.
The court, in its charge to the jury, instructed it to deduct from the expense account said sum of $250 paid as attorney's fees for answering a garnishment proceeding at Brownwood, and said sum of $83.70, traveling expenses of J. L. Tyler, and error is assigned to this instruction. It was a proper instruction. The evidence shows that the $250 attorney's fees was paid for answering in a garnishment against the Tylers individually, and this was not a proper charge against the partnership. As to the item of $83.70, the evidence shows that this was traveling expenses of J. L. Tyler, on his individual business, and, of course, that could not be charged against partnership funds.
It is contended that the verdict is vague and indefinite and not responsive to the pleadings, issues, and evidence. It is not pointed out in what particular it is subject to the objection urged, and we think the objections are without merit. The verdict is clearly sufficient and responsive to the pleadings, issues, and evidence.
It is also contended that the verdict and judgment was contrary to the law and unsupported by the evidence. An examination of the testimony shows that the verdict is amply supported thereby, and, under the verdict found, the law was properly applied in the judgment rendered.
Affirmed. *Page 1118